[L. A. 14225. In Bank.—May 26, 1937.]

SABINA CARDINALE, Appellant, v. MARIO CARDINALE, Respondent.

Edw. L. Johnson and Noon & Noon for Appellant.

A. T. Procopio and Hugh K. McKevitt for Respondent.

SEAWELL, J.—Appeal from an order terminating the allowance to plaintiff of separate maintenance.

Plaintiff Sabina Cardinale and defendant Mario Cardinale were married in San Francisco on January 22, 1910, and lived together as wife and husband until about July 27, 1921, there being one child the issue of said marriage. After the separation of the spouses and on July 29, 1921, the wife commenced an action against the husband in the Superior Court of San Diego County for separate maintenance. The husband answered and cross-complained for divorce on grounds of desertion and extreme cruelty. The trial court found that the wife had been a resident of San Diego County for more than ninety days prior to commencement of the action and of the state of California for more than a year but that the husband during the past year had been a resident of Tijuana, Republic of Mexico; that about July 27, 1921, the husband had, without provocation, compelled the wife to leave his home in Tijuana and had forced her, against her wishes, to live separate and apart from him in National City, California, and that by reason of his acts and conduct, the wife had suffered great physical and mental anguish, and her married life had been rendered unbearable and the husband had thereby deserted her. On these findings the court entered a decree of separate maintenance which provided that the wife was entitled to live apart from the husband and to have custody of the child and ordered the husband to pay $40 a month for the child's support and

$40 a month for the wife's support. From this decree the husband took no appeal. He made the required payments for wife and child up to December, 1924, when the child died, and thereafter for a number of years, until some time in 1931, he made payments toward the wife's support only.

In the fall of 1931 the husband proceeded to Nevada and there sued the wife for divorce on grounds of extreme cruelty and separation for more than five consecutive years preceding the filing of the action. Service of summons upon the wife was had by publication and upon her default, and on December 9, 1931, the husband was granted a decree of divorce.

On June 18, 1932, in San Diego County, in the separate maintenance action, the wife, without notice to the husband, procured a judgment against him for $998, the alleged amount of arrears in monthly payments due her under the separate maintenance decree. In October, 1932, the husband moved the court to set aside this judgment for arrears and to modify the decree of separate maintenance and to decree that payments for the child terminated as of her death, and payments for the wife's support terminated as of the date of the Nevada divorce, December 9, 1931. In support of his motion the husband filed affidavits setting up the child's death, and the Nevada judgment of divorce, and averring that he had in fact made payments to the wife in sums in excess of the amount due her. Counteraffidavits were filed by the wife tending to show that the husband was in fact $998 in arrears and that the Nevada divorce decree, procured on constructive service, was based upon a simulated domicile and false affidavit for publication and hence was fraudulent, void, and subject to collateral attack. The wife pointed to the fact that the husband went to Nevada from Tijuana for only a short period and left soon after the granting of the divorce and she averred that as he knew her whereabouts and had made payments to her at about that time, and also knew where her relatives lived, he could not have been unable to locate her and secure personal service. Answering affidavits were filed on behalf of the husband averring that he was sent to Nevada by his employer to investigate the possibilities of locating a business there and he established a *bona fide* residence and domicile in that state; that, not knowing where his wife was, he had hired one Selvaggi to inquire at her

last address, but Selvaggi was unable to ascertain her whereabouts.

The cause was submitted upon these conflicting affidavits and the court on December 15, 1932, entered findings and judgment in favor of the husband. The court found that the husband had established a *bona fide* residence and domicile in Nevada and there procured a good and valid judgment of divorce, after full compliance with the laws of that state with respect to service upon the wife of summons by publication, and that the husband had performed fully the provisions of the separate maintenance decree and owed the wife nothing thereunder on June 18, 1932. It was therefore adjudged that the $998 judgment entered against the husband on the last-mentioned date be set aside and that the separate maintenance decree of March 2, 1923, be modified and the provisions thereof terminated and that the requirement that the husband pay $40 a month for the wife's support ceased and became inoperative as of December 9, 1931. From this judgment the wife here appeals. Her main contentions relate to the validity and effect of the Nevada divorce decree.

In this state a foreign divorce decree is subject to collateral attack upon three recognized jurisdictional grounds, i. e., (1) that it was procured upon a fraudulent domicile or residence; (2) that the laws of the state granting the decree were not complied with, and (3) that the spouse who was domiciled in the foreign state, which was not the matrimonial domicile, and who procured the divorce, was the wrongdoer, whereas the other spouse, a citizen of this state who was neither personally served nor appeared in the foreign action was the innocent party. If any one of these jurisdictional defects is established as a matter of fact, the foreign decree will not be recognized as valid in this state. However, the foreign decree, regular on its face, is entitled to a presumption of validity, and the burden is upon the party attacking it. (*Delanoy* v. *Delanoy*, 216 Cal. 27 [13 Pac. (2d) 719, 86 A. L. R. 1321].)

In the trial court appellant's attack upon the Nevada decree was confined to grounds one and two, *supra*. These two issues were submitted to the trial court upon conflicting affidavits as above described, and the court by its findings held that the burden of attack was not met by appellant. These findings, having sufficient support, on appeal are con-

clusive and binding upon this court. The further finding of the trial court to the effect that there were no delinquent payments due the wife likewise has sufficient support and will not be disturbed.

Appellant, in her opening brief, urges the third ground of attack upon the foreign divorce decree, contending that the husband was the wrongdoer and she was without fault. No evidence whatsoever was presented in the court below upon this subject and the court made no finding of fact with respect thereto. Appellant's claim is that the proceedings in the separate maintenance action established her innocent status.

The effect of the separate maintenance decree was to establish appellant as the innocent party and the husband as the wrongdoer as of the date the decree was entered, March 2, 1923, and to constitute a bar to any later action for divorce by the husband predicated upon facts in existence prior to said date. (*Helpling* v. *Helpling*, 50 Cal. App. 676 [195 Pac. 715].) Thus, if it appeared that the Nevada divorce was predicated upon acts of cruelty committed by the wife prior to March 2, 1923, there could be no question that the separate maintenance decree established her innocent status and on that ground the foreign decree should be denied recognition. But the record herein utterly fails to show when the acts of cruelty alleged as ground for the Nevada divorce occurred. The complaint in the Nevada action was introduced in evidence. It merely charged extreme cruelty in most general terms, without any reference to the period during which the acts were committed, alleging that ''defendant has been guilty of treating plaintiff with extreme cruelty, and inflicted upon him, great and grievous mental and physical suffering and distress'', and that for more than five consecutive years immediately preceding the filing of the complaint, which would be from 1926 to 1931, the spouses lived apart without cohabitation. As the presumption is in favor of the validity of the Nevada decree and the burden was on appellant to establish as a fact that it was obtained on false testimony amounting to a fraud upon the foreign court (*Delanoy* v. *Delanoy, supra*), it will not be presumed, in the absence of any showing on the subject, that the alleged cruelty upon which the Nevada judgment was predicated occurred prior to entry of the separate maintenance decree on March 2,

1923, rather than after 1923.   ■   No contention is made that the Nevada complaint, because of the general tenor of its allegations, was defective or insufficient to support the divorce decree nor could such a contention be sustained in this collateral proceeding.   An imperfect or defective complaint, which otherwise sufficiently states the facts to give the court jurisdiction of the subject-matter of the action, is a mere error or irregularity not going to the jurisdiction, and hence is not a proper ground of collateral attack upon a foreign decree of divorce.   (9 Cal. Jur., p. 819.)

■   This cause, as above stated, was submitted to the trial court on conflicting affidavits, which made no showing on the subject of whether appellant's innocent status obtained subsequent to entry of the separate maintenance decree in 1923.   In view of the presumption in favor of the validity of the later foreign divorce decree, it will not be presumed that she continued to be the innocent spouse after securing separate maintenance.   Furthermore, not only was there an absence of any attempt on the part of appellant to prove that she was not at fault after March 2, 1923, but she in fact averred, among other things, as follows: ''That the defendant herein is a native of Italy, and prior to 1922 lived for many years in San Francisco with this affiant as husband and wife; that after said defendant commenced the restaurant and saloon business in Tijuana, this affiant lived there with him for a period of two or three weeks, prior to their separation; that since that time he has remained in San Diego a great deal of the time and has continuously visited affiant and remained with her for brief periods, during which they, at affiant's various residences in San Diego, at 555 20th street and on Juniper street, affiant and said defendant had the relationship of husband and wife; that the last occasion was in June of 1931. . . . ''

These averments of appellant herself show that subsequent to March 2, 1923, there could have been a condonation of the husband's prior offenses, or a repentance on his part and offer in good faith to fulfill the marriage contract (1 Cal. Jur., pp. 1027, 1028, secs. 79, 80) and the commission thereafter of acts of cruelty by the wife against him upon which the divorce action might have been predicated.   ■   A cause of action for divorce may be grounded upon acts of cruelty committed subsequent to final separation of a husband and

wife. (*Stitt* v. *Stitt, ante,* p. 450 [65 Pac. (2d) 1297].) On the showing made by this record and in view of appellant's failure to offer any proof of her continuing status as innocent party, it must be held that she failed to sustain upon that ground the burden of attack upon the foreign divorce decree.

The trial court, having found no invalidity in the Nevada divorce decree, properly terminated the allowance to appellant of separate maintenance as of the date that decree was rendered. (1 Cal. Jur., p. 1038, sec. 88; 30 C. J. 1095.)

The order and judgment modifying the decree of separate maintenance and setting aside the default judgment is affirmed.

Curtis, J., Langdon, J., Thompson, J., and Shenk, J., concurred.