[L. A. No. 18924. In Bank. Jan. 29, 1946.]

HELEN M. DeYOUNG, Appellant, v. CLARENCE DeYOUNG, Respondent.

Victor A. Gillespie and Lester E. Hardy for Appellant.

Otto A. Gerth for Respondent.

SPENCE, J.—This is an appeal by the plaintiff, Helen M. DeYoung, from an adverse judgment in an action for separate maintenance. Defendant, Clarence DeYoung, successfully defended upon the ground that the marital union between himself and plaintiff had been dissolved by a judgment and decree of divorce rendered by the Civil Court of Bravos District, State of Chihuahua, located at Juarez, Mexico, on June 5, 1936.

Plaintiff contends that the findings of the trial court to the effect (1) that defendant acquired a bona fide domicile in Mexico and (2) that "due and proper notice" of the divorce proceedings was given to her, are not supported by substantial evidence. After a review of the record, it appears that there is substantial evidence to support said findings and that the judgment should be affirmed.

Plaintiff and defendant intermarried in 1925 and lived together until June, 1931, principally in Grand Rapids, Michigan, where defendant engaged in the garage business. At that time plaintiff, with her daughter by a previous marriage, left defendant and returned to her former home in Stamford, Connecticut. The parties never resumed marital relations although they continued to communicate with each other by mail until April, 1936. Plaintiff testified that defendant became ill in 1931 and that the separation took place as the result of her suggestion that she return to her former home for the summer so that defendant could get on his feet again. According to defendant, his wife told him at the time of the separation that she did not want anything more to do with him. Defendant's health continued to be "up and down" during the years 1931 to 1936. In the spring of 1936, defendant sold his garage business. According to his testimony, he then left Grand Rapids for the reason that he desired to go to a warmer and milder climate, more conducive to his health. He arrived in Juarez, Mexico, about April 1, 1936, and on April 25, 1936, filed an action to obtain a divorce from the plaintiff herein. Three days later he registered as a resident of Juarez. Mrs. DeYoung did not appear in the action and defendant was granted a decree of divorce on June 5, 1936. Except for a short visit to Los Angeles in July, 1936, defen-

dant remained in Juarez until December, 1936, when he went to Los Angeles where he has since resided. In February, 1937, he married Mrs. Lelia Marshall, his former bookkeeper.

No evidence was introduced regarding the law of the State of Chihuahua, Mexico, but for the purpose of the discussion of plaintiff's first claim of insufficiency of evidence, we may assume, without deciding, that regardless of whether the law of the State of Chihuahua did or did not make domicile a condition to its court's jurisdiction, the decree of divorce obtained there would be subject to collateral attack in this state if defendant herein had no bona fide domicile there. (See *Estate of McNutt,* 36 Cal.App.2d 542 [98 P.2d 253]; *Stewart,* v. *Stewart,* 32 Cal.App.2d 148 [89 P.2d 404]; *Du-Quesnay* v. *Henderson,* 24 Cal.App.2d 11 [74 P.2d 294]; 105 A.L.R. 817, 822; 143 A.L.R. 1284, 1313 and cases there cited.) But upon this collateral attack, made upon the Mexican decree by plaintiff herein, the burden was upon plaintiff to sustain her claim that no bona fide domicile in Chihuahua had been established by defendant (*Cardinale* v. *Cardinale,* 8 Cal.2d 762 [68 P.2d 351]; *Collins* v. *Maude,* 144 Cal. 289, 293 [77 P. 945]), and the trial court concluded that plaintiff had failed to sustain that burden.

The acquisition of a new domicile is generally understood to require an actual change of residence accompanied by the intention to remain either permanently or for an indefinite time without any fixed or certain purpose to return to the former place of abode. (See cases collected in 106 A.L.R. 6, 14; 28 C.J.S., Domicile, § 1; 17 Am.Jur., Divorce and Separation, § 250, Domicil, § 2; Rest., Conflict of Laws, § 12, p. 24.) Merely abiding in a place for a definite time for a transient purpose such as obtaining a divorce, unaccompanied by any intention to remain permanently or indefinitely, is not sufficient. (See 106 A.L.R. 6, 15; 9 R.C.L. 452; Rest., Conflict of Laws, § 22, p. 46.)

There was abundant evidence in the record here to show that defendant herein actually changed his residence to Juarez; that his change of residence to Juarez was accompanied by the intention to remain in Juarez either permanently or for an indefinite time; and that he had no intention of returning to Grand Rapids and did not return there. Defendant was admittedly in poor health from 1931 to 1936 and admittedly had a siege of influenza in 1936. He testified that he was told that Juarez had a warmer climate and that he

went there for the benefit of his health and not for the purpose of getting a divorce. He further testified that he was advised that there were business opportunities in his line in Juarez because of the numerous tourists going through Mexico; that he went there and worked as a service station operator while looking for a business of his own. After obtaining his divorce in June, 1936, he remained continuously in Juarez for approximately six months until December of that year, except for a short trip to Los Angeles in July. Facts relied upon by plaintiff, such as defendant's failure to mention in letters written to her, in the spring of 1936, anything about a contemplated trip to Mexico or a divorce, which might tend to indicate that defendant did not go to Juarez with a bona fide intention of making that city his home, merely tended to create a conflict in the evidence and this being so, the finding of the trial court cannot be disturbed. (*Cardinale* v. *Cardinale*, 8 Cal.2d 762, 766 [68 P.2d 351]; *Collins* v. *Maude*, 144 Cal. 289 [77 P. 945]; *Estate of James*, 99 Cal. 374 [33 P. 1122, 37 Am.St.Rep. 60].)

Plaintiff's next contention is that the evidence does not support the finding that ''due and proper notice'' of the divorce proceedings was given her. In the absence of any evidence of the Mexican law, plaintiff relies upon the presumption that the law there is the same as that of California. (See *Wickersham* v. *Johnston*, 104 Cal. 407 [38 P. 89, 43 Am.St. Rep. 118]; *Perkins* v. *Benguet Cons. Min. Co.*, 55 Cal.App.2d 720, 768, 769 [132 P.2d 70].) Sections 412 and 413 of the Code of Civil Procedure require the publication of summons and the mailing of the summons and complaint to the residence of a nonresident defendant whose address is known. Defendant herein testified that he gave plaintiff's name and address to the attorney who handled the Mexican divorce proceeding; and the Chihuahua decree, a duly authenticated copy of which was introduced, recites that publication of summons had been made and that ''all the legal requirements have been complied with.'' This evidence was ample to support the trial court's finding that ''due and proper notice'' had been given. (*Collins* v. *Maude*, 144 Cal. 289 [77 P. 945]; *Plante* v. *Plante*, 54 Cal.App.2d 318 [128 P.2d 787]; *Galloway* v. *Galloway*, 116 Cal.App. 478 [2 P.2d 842].)

The present claim of plaintiff regarding notice was not mentioned in the opening brief on appeal and appears only in a supplemental brief now on file. It was apparently

not urged in the trial court as plaintiff offered no testimony to show that she had failed to receive a copy of the complaint and summons in 1936, advising her of the pendency of the divorce action. The only reference to notice of any kind, found in the testimony offered by plaintiff, is to the effect that she first obtained knowledge in 1937 that defendant had secured a divorce. Plaintiff places much emphasis upon the letters written by defendant in the spring of 1936, claiming that these letters tend to impeach defendant's testimony that he gave her address to his counsel in the Mexican divorce proceeding. Such letters do not have the persuasive force attributed to them by plaintiff but even if it be assumed that the evidence offered by plaintiff created a conflict and would have supported a contrary finding on the issue of notice, the probative value of the evidence was a matter for the determination of the trial court. ■ The power of an appellate court ends with respect to the facts when it determines that there is substantial evidence which supports the trial court's findings. (*Viner* v. *Untrecht*, 26 Cal.2d 261, 267 [158 P. 2d 3] ; *Stromerson* v. *Averill*, 22 Cal.2d 808 [141 P.2d 732] ; *Watson* v. *Poore*, 18 Cal.2d 302 [115 P.2d 478].)

■ In a brief filed after oral argument in this court, plaintiff advances a further contention based upon the proposition already alluded to that because there is no evidence concerning the law of the State of Chihuahua, Mexico, it must be assumed that such law was the same as that of California. Upon the basis of such assumption plaintiff seeks to inject into the case the residence requirements enunciated in section 128 of the California Civil Code. That section requires the plaintiff in a divorce action to have been a resident of the state for more than one year and of the county in which the complaint was filed for more than ninety days immediately preceding the date of the filing of the action. A sufficient answer to this contention is that section 128 of the Civil Code does not impose any limitation upon the jurisdiction of the superior court. (*Bullard* v. *Bullard*, 189 Cal. 502, 506 [209 P. 361] ; *Estate of McNeil*, 155 Cal. 333, 341 [100 P. 1086].)

■ The attack plaintiff makes upon the Mexican judgment is collateral, and such attack cannot be successfully made upon grounds which would amount, at most, to a showing of error in the exercise of jurisdiction.

The foregoing discussion disposes of all the contentions of plaintiff and such disposition makes it unnecessary to consider

a further contention of defendant that plaintiff is estopped from prosecuting her present action because of acquiescence in the divorce decree granted in Mexico, for five years after obtaining knowledge of its entry.

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Edmonds, J., concurred.

SCHAUER, J.—I concur in the judgment and generally in the propositions of law discussed in Mr. Justice Spence's opinion. Such concurrence in the opinion, however, is subject to the reservation that there is intended no implication that a foreign divorce decree, although fully valid insofar as the determination of marital status is concerned, necessarily constitutes a defense to an action for support.

In a divorce action in a foreign state upon constructive service the court there has authority to adjudicate status (in rem) of a person residing in that state but has not jurisdiction to adjudicate away (in personam) any of the then vested property rights of the absent spouse who does not reside in such state, who is not personally served with process in that state and who does not appear in the action. The personal rights of the spouses in property not within the jurisdiction of the acting court remain subject to litigation in the proper forum. It seems to me that the right of a wife, or in a proper case the husband, to support from the other spouse as of the date of the divorce is a property right which can be adjudicated only by a court having jurisdiction in personam.

The above stated view does not necessarily conflict with the well established proposition that a court having jurisdiction over a domiciliary may adjudicate his marital status in rem and that (assuming due process) as an incident of the change of status any rights to future accruing support *dependent upon a continuing marital status* no longer accrue because the status no longer exists. But it is, of course, a familiar principle that alimony decreed as of the date of a divorce may continue into the future when the parties have attained complete termination of the marital status. And I am of the view that rights to support in the form of alimony *as of the date of the divorce* (which alimony may continue into the single status), at least where there is no adjudication of fault (see *Herrick* v. *Herrick* (1933), 55 Nev. 59, 64 [25 P.2d 378]), may well be subject to judicial determination in a subsequent action in a proper forum having personal juris-

diction over both parties. Such an action, being based on the marital status as it existed prior to the divorce, would have to be instituted before the statute of limitations or laches barred it. The statute would normally start to run as of the date of the decree but would, of course, be tolled by absence of the party defendant from the state.

It is to be noted that the Mexican court in Mr. De Young's action recognized the distinction between its powers in rem and in personam and expressly provided in its decree that ''As there are no children nor properties of the marriage within the jurisdiction of this Court, nothing is to be resolved in this decree regarding these matters.'' Here, however, the action before us (commenced November 30, 1942) does not seek alimony based on the former marital status. It is for separate maintenance and plaintiff relies upon the allegation ''That she is the wife of Clarence De Young.'' The trial court found, upon sufficient evidence ''that since June 5, 1936, the parties hereto were not husband and wife and bore no marital relation or obligation toward each other, and that there was and is no community property'' and further that ''during the month of October, 1937, the plaintiff herein, Helen M. De Young, learned fully that the defendant, Clarence De Young, had obtained a final divorce from her prior thereto.'' Separate maintenance differs from alimony in that it presupposes a continuing marital status. The right to it cannot be established without proof that such status is existent as of the time of trial. Proof of prior dissolution of the marriage is, therefore, a complete defense to such an action.

Even if we should construe the complaint as setting up a cause of action for alimony as of the date of the divorce decree we could not disturb the judgment. The trial court herein found (and the sufficiency of the evidence in this respect is not challenged) that ''since June 1931 to the present time the parties hereto have lived separate and apart from each other and during all of said time and up to the time that this defendant was divorced from the plaintiff . . . the plaintiff deserted and abandoned the defendant against his will and wish and without his consent and lived separate and apart from him'' and that ''during the entire course of the marriage relationship of said parties hereto the plaintiff was guilty of extreme cruelty practiced in and upon and toward this defendant'' in many particulars, all as specifically alleged in defendant's affirmative defense. It is also to be re-

membered that the present action was not commenced until November 30, 1942, although (according to the court's finding) plaintiff had acquired full knowledge, in October, 1937, that defendant had obtained a divorce prior thereto. In the light of those findings plaintiff is not upon any view of the law or theory of action entitled to recover.

Carter, J., and Traynor, J., concurred.