[Civ. No. 24267.    Second Dist., Div. One.    Apr. 26, 1960.]

Estate of HARRY HERSCHEL CLEMENS, Deceased. TOBY CLEMENS REIN, Appellant, v. JACQUELINE CLEMENS, Respondent.

Stanley G. Swarzman and John Joseph Hall for Appellant.

Lillie & Bryant, George M. Bryant and W. D. Clay for Respondent.

SCOTT (Robert H.), J. pro tem.*—Toby Clemens Rein, sister of Harry Herschel Clemens, deceased, and the executrix of his will, has appealed from an order directing her to pay a family allowance to Jacqueline Clemens, widow of deceased. She challenges the validity of the latter's marriage on the sole ground that the widow's earlier marriage to one Howard Nielson had not been legally terminated.

Jacqueline Clemens and Harry Herschel Clemens, a physician, were married in Las Vegas, Nevada, on August 10, 1958. The next day the bridegroom became ill and on August 14, 1958, he died in Pasadena. He left a will dated January 21, 1952, which made no provision for this respondent. While this appears to have been his first marriage, his wife, the respondent in this case, had been previously married to Roger Mallory (in 1945), to Howard Nielson (in 1948) and to William Lloyd (in 1955).

The sister, who is executrix of the will, resists the order for payment of the family allowance because it appears to her that Nielson obtained the divorce from the present Mrs. Clemens at a time when the court in the state of Nevada which granted the decree had no power to do so because, she asserts, Nielson was not a bona fide resident of that state.

The trial court in this case found that a decree of divorce dissolving the bonds of matrimony between Howard Nielson and Jacqueline Nielson was made and given by a court of competent jurisdiction in Clark County, Nevada, at a time when Howard Nielson was found by that court to be a bona fide resident of that county and state and to have been so for more than six weeks before filing the action for divorce. The trial court in this case thereupon determined that the Nielsons were legally divorced, and that the prior marriage constituted no obstacle to the marriage upon which the present proceedings were instituted and made an order for a family allowance in a moderate amount and for a limited period of months.

█■█ The evidence discloses that Howard Nielson had been living in a trailer in Los Angeles County, that work was very slow here at the time in his line as a sheet metal worker, that he gave up the trailer and went to Las Vegas. When asked, "did you have any intentions as to the changing of your

*Assigned by Chairman of Judicial Council.

residence from the State of California to any other state?"
he replied, "Yes; I meant to go up there and work." Upon
being asked, "When you arrived in Las Vegas, Nevada, then
do I take it that you intended to reside in Nevada?" he an-
swered, "Yes," and when asked, "Now, did you intend to
make your home there?" he replied, "Yes, I believe so."

When Nielson arrived in Las Vegas he found sheet metal
workers to be on a strike and so he joined the Laborers Union
and obtained work, residing in a private rooming house and
playing baseball for recreation. By the time the divorce case
was tried and the decree was granted, sheet metal work was
available in California so he returned to this state.

He had gone to Las Vegas with the knowledge and approval
of his wife and had there employed an attorney who had been
recommended by a member of the State Bar of California.
There is no claim that property rights were involved or that
the parties had any children.

Appellant suggests that Nielson failed to do various acts
which would have shown his intention to change his residence
to Nevada, such as maintaining a checking account in a bank
and joining a church or Y.M.C.A. But he testified in this
case: ". . . I don't believe I had a checking account when I
was—before I went to Las Vegas," and there was no evidence
of membership in any organization either before or after his
stay in Nevada.

Appellant directs our attention to language in *DeYoung* v.
*DeYoung*, 27 Cal.2d 521 [165 P.2d 457], emphasizing the
importance of intention as an essential ingredient in the
change of residence. We note, however, that in the cited case
the finding and judgment of the trial court upholding the
validity of a decree of divorce granted in Mexico was sus-
tained on appeal, the opinion stating (p. 526), "The power
of an appellate court ends with respect to the facts when it
determines that there is substantial evidence which supports
the trial court's findings."

The case of *Brill* v. *Brill*, 38 Cal.App.2d 741 [102 P.2d
534], further relied on by appellant, is distinguishable from
the instant case because in that earlier case the trial court
found that the party obtaining a Nevada decree of divorce
never had been a bona fide resident of or domiciled in Nevada
and gave judgment based upon a determination that the
decree was invalid; and that judgment was affirmed on appeal.

The case of *Huntington* v. *Huntington*, 120 Cal.App.2d 705
[262 P.2d 104], similarly fails to support this appellant's

contention. In that case the judgment of the trial court was approved on appeal. The husband had obtained a decree of divorce in Nevada at a time when, according to the finding of the trial court, he was a resident of California and his activities designed to identify him as a resident of Nevada were dishonest and insufficient.

Our attention is directed to the case of *Crouch* v. *Crouch*, 28 Cal.2d 243 [169 P.2d 897]. In that case the appeal was on the judgment roll alone. In reversing the case on appeal the court stated that therefore ''it will be presumed that the finding as to the respondent's lack of good faith in establishing a Nevada domicile is supported by the evidence.'' As noted above, that is not the condition of the record in the case now before us.

A reading of the entire transcript discloses reasonable conduct on the part of respondent. She had known Dr. Clemens for many years and he had rendered professional service to members of her family. He knew about her unfortunate marital experiences and over the years their acquaintance ripened into affection which led to their marriage. This ceremony took place in the state in which the decree of divorce from Nielson had been granted. There is no reason to believe that the order made by the trial court in this case was contrary to that which Dr. Clemens would have desired, or is in any way inequitable.

Without setting forth the evidence in further detail it is sufficient to observe that the evidence relied upon by appellant together with inferences in favor of her position that might be drawn therefrom does nothing more than create a conflict upon the point in dispute. Under such circumstances the finding of the trial court must stand. *Baldwin* v. *Baldwin*, 28 Cal.2d 406 [170 P.2d 670].

Order affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 16, 1960, and appellant's petition for a hearing by the Supreme Court was denied June 22, 1960.